UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATIONAL CASULATY COMPANY | : | CIVIL ACTION NO. 2:13cv05611 |
| AND AMERICAN ALTERNATIVE | | |
| INSURANCE COMPANY | : | ADMIRALTY RULE 9(h) |
| | | |
| VERSUS | : | SECTION "J" (4) |
| | | |
| DEQUEEN, INC. | : | JUDGE BARBIER; MAG. ROBY |

MEMORANDUM IN SUPPORT OF DEQUEEN, INC'S. MOTION
THAT THE COURT DECLINE JURISDICTION UNDER 28 USC 2201

May It Please the Court:

DeQueen, Inc. moves that this Court decline to accept federal jurisdiction over the "Declaratory Judgment" sought by insurers National Casualty Company and American Alternative Insurance Company under 28 USC 2201 et seq., the federal Declaratory Judgment Act, for the following reasons, which will then be addressed in detail in the Statement of Underlying Facts, Legal Argument, and by reference to the Exhibits herein, which are especially relevant in this particular matter:

Statement of Underlying Facts

On September 13, 2012, the F/.V DeQueen, owned and operated by DeQueen, Inc. and being piloted by a very competent captain, Phuong Tran, who had been referred to in the on board warranty in the insurance policy discussed below and who had piloted the

1

vessel for years, suddenly was overcome by heavy waves in a
storm near Southwest Pass in the Mississippi River. Despite
Phuong Tran's best efforts, the vessel foundered and sank.

The Trans, owners of the corporation, claimed under the
hull and p & I policy issued to DeQueen, Inc. and which was
prepared by G & M Marine, Inc., the underwriter of the policy
(insurance being provided in 50-50 coverage by National Casualty
and American Alternative respectively). In response, G & M cited
an astonishing change in the "on board" warranty not noticed by
the Trans. As seen below, the "on board" warranty is a special
clause insisted upon by insurers, not the insured, in many
policies although it is not a necessary clause. This clause
requires the insured to list the competent captains who must be
on board piloting the vessel when it leaves the docks and if a
named captain is not on board, the policy is not complied with.
Obviously, the insurer seeks to be certain that the insured does
not put on board the vessel a captain not familiar with and
competent to pilot the vessel or not familiar with areas to be
navigated and not aware of special problems (e.g., sandbars,
wrecks, etc.) to be encountered in navigating those areas. Cases
are cited below on the importance of the warranty.

G & M Marine, Inc. as underwriter has been the constant
entity in preparation of the policy, no matter who the insurers
may be. It will become very clear during discovery that G & M

fact, as she states in her Affidavit annexed herein as Exh. 2, she has, in fact, never set foot on the F/V DeQueen although she is a co-owner. Further, Lanh Nguyen is an occasional deckhand who cannot pilot the vessel and Captain Hung Tran, Mrs. Tran's husband and a co-owner, states he would never allow Lanh Nguyen to attempt to pilot the vessel, as in his view Lanh Nguyen does not have the experience or ability to do so. See Affidavit of Hung Tran, Exh. 3. Only Hung Tran and Phuong Tran have piloted this vessel since the inception of ownership of the vessel. No one else has been allowed the pilot the vessel.

Therefore, the "on board warranty" has now been rendered senseless. It would be an "absurd consequence" to attempt to enforce the warranty by claiming that (admittedly being a bit dramatic but still consistent) the insurers apparently would take the position that the warranty would have been complied with had Mrs. Tran merely been sitting on board doing her needlepoint while allowing her six-year old grandson to try to learn how to be a vessel pilot by trying to steer the vessel and if the grandson ran the vessel into a dock and it sank, still there would be coverage because Mrs. Tran was on board. This is absurd and the state court proceeding correctly frames the issue as "error" in confection of the policy provision, not an issue per se of the on board warranty, as the Trans state they never would knowingly modify the on board warranty and did not do so,

4

because they are aware that this would mean no insurance loss would ever be covered. See Affidavits of Trans, Exh. 2 and 3.

This was the essence of refusal to cover a loss which almost universally would be covered in any other similar situation. Asked if she could recall any time where she would link Lanh Nguyen's name with hers, because otherwise the two have no real connection, Mrs. Tran stated that it was explained to them that by some regulation an American citizen had to be on board the vessel when it was operating. In response to an inquiry about all persons listed who were American citizens, she listed herself and Lanh Nguyen as the two involved parties who held American citizenship and it is believed that somehow this information was erroneously placed in the "on board warranty".

The Court also needs to know that while the Trans' command of English is very limited and they cannot actually translate the policy provisions to any meaningful extent, still, as the F/V DeQueen was their sole income asset and now that coverage is declined the Trans are in severe financial circumstances, their main obligations had been explained to them in earlier years through an interpreter. They have always understood their important obligations to the insurer and have been assiduous in complying with what is required of them. For example, on the voyage during which the casualty occurred, as Lanh Nguyen could not be on board, the Trans had made sure that Paul Landry of

Houma, who was an American citizen by birth, was on board the vessel as a deckhand-fisherman.

The following series of events adds to the prima facie proof of error, mistake and total confusion in the on board warranty and further shows why G & M Marine Underwriters are named in total good faith in the state court proceeding (in the Notice of Removal, the insurers make the assertion that DeQueen, Inc. "fraudulently" added G & M in the state court proceeding for no other reason than to obtain state court jurisdiction, when really G & M Marine, Inc. operatively is the main defendant based on all information to date. When undersigned counsel advised G & M that it had somehow changed the on board warranty by mistake, G & M and the insurers' counsel, obviously believing his client, sent (see Exh. 4a, b, c and d) three documents which he asserted involved: "The executed insurance application, Terrorism Risk Insurance Act form (TRIA), and Captain's Form were submitted to Underwriters on October 26, 2011. All three of the documents contain identical signatures, one with the printed name of "Dao Tran" below it."

The three documents are, in fact, from different times and different policies and make no sense. G & M's attorney claimed Mrs. Dao Tran executed these documents on October 26, 2011, but apparently documents are being lifted from different policies on different dates, because the first two are not executed by Mrs.

is in that policy and clearly could not have been part of an
October 26, 2011 renewal. At this point, this Court can see the
utter confusion in this matter and this utterly contradicts
their counsel's statements.

These exhibits, if anything, add to the Trans' allegations
and now raise serious issues as to whether someone in the
underwriting office is engaging in behavior which at present
will merely be called "bad faith", but if discovery suggests
otherwise, more serious allegations will be added to the Trans'
petition. Of course, the insurers did not want any of this
brought before the Court in the "declaratory judgment". In
passing, although the three documents are claimed to be part of
an annual "renewal" of the policy, none appear to be a renewal
and the one allegedly executed (both not executed) by Mrs. Tran
is just a form declining terrorism risk coverage, not a renewal.

In fact, this Court will note that in the insurers' First
Supplemental and Amended Complaint for Declaratory Judgment,
they assert that: "On October 26, 2011, DeQueen submitted a
signed Captains Form to G & M as part of documents required to
complete a policy."  Allegation 8, page 3. As said, the Trans
fully contest the validity of this statement and point out not
only did Captain Hung Tran not submit this "Captains Form" but
on October 26, 2011, it had been at least four years since he
signed any insurance document. Thus the documents (two of which

8

are undated), cannot possibly have been submitted on October 26, 2011. If nothing else, this raises serious issues of material fact making declaratory judgment inappropriate. The Trans have set forth above enough issues (all to be resolved in discovery) which make this wholly unfit for declaratory judgment.

Thus the main defendant and the correct facts are left out of this attempt at eliminating a serious case by a "declaratory judgment" leaving out serious contested material facts.

<u>LEGAL ARGUMENT</u>

1 – The insurers seek to have the Court state that their policy does not cover the insured in this matter involving the sinking and total loss of the F/V DeQueen, owned by DeQueen, Inc., because of alleged breach of the "on board warranty". This warranty is well-known to this Court and its purpose, insisted upon by insurers, is to make certain that the vessel is being piloted by competent named captains familiar with the vessel and areas to be navigated (see law below). Of course, the insurers actually make some allegations of fact which would involve discovery and development of the facts by testimony, which again makes the matter unfit for Declaratory Judgment, in that they claim to rely upon the hearsay statement by deckhand Paul Landry that neither Ms. Dao Tran nor deckhand Lanh Nguyen were aboard the vessel at the time--but the essence of their denial of coverage is that the "on board warranty" was breached.

9

2 – Previously, when G & M Marine, Inc. has issued policies, then through St. Paul Fire & Marine, Inc., the on board warranty correctly contained the names of "Hung Tran or relief captain" who was then and has always been Phuong Tran and these two captains have consistently piloted the vessel from inception. In fact, on the voyage in question, Phuong Tran was indeed the pilot and captain of the vessel when it was overcome by heavy waves and sank, and so a competent captain was piloting the vessel and it foundered due to no fault of his own.

3 – At some time in preparing almost the same policy for the new insurers, there was substituted for the two competent captains the names of "Dao Tran" and "Lanh Nguyen", neither of whom can competently pilot the vessel and the insurers state that as they allegedly were not aboard the vessel at the time, this breached the "on board warranty". Ms. Dao Tran is a co-owner of DeQueen, Inc., but she is a housewife who cannot pilot a vessel not serve as a deckhand or fisherman (see Affidavit) and, in fact, has never actually set foot on the vessel in her life. Lanh Nguyen is an occasional deckhand who is not competent to pilot the vessel and the Captain Tran states (see Exh, 3) he would never even allow Nguyen to attempt to pilot the vessel. The "on board warranty" now makes absolutely no sense and is either rendered void or, in the state court pleadings,, DeQueen, Inc. alternatively asks the state court to reform the clause to

10

reflect its true intent and the real intent of the parties with regard to that warranty and to substitute in the warranty the actual competent captains, Hung Tran or Phuong Tran, so that the warranty again makes sense and recognize that Phuong Tran, a competent captain, was fully aboard and piloting the vessel at the time and DeQueen, Inc. had actually complied with the real intent of the on board warranty and coverage should be afforded.

4 – There are, therefore, serious issues of material fact as to how this change took place, as the Trans (see Affidavits) state under oath that they never would have intentionally changed this warranty to remove two competent captains (which, of course makes sense because the Trans know that this would guarantee there would never be any coverage under the policies and although the Trans have limited abilities in English, their obligations were long ago explained to them by their insurance agent, who once even wrote them a letter explaining the importance of this warranty; the Trans understand their main obligations under the policies and have been strict in complying with those obligations as the fishing vessel was their only source of income and livelihood.

5 – Thus, the question was who was the source of this bizarre change and all evidence pointed to someone making a clerical error at G & M Marine, Inc. To fully develop the underlying facts, it will be necessary to produce and examine

11

all of G & M's files involving the Trans for certainly the last seven or eight years to determine when, where and how this odd substitution occurred. Because the Trans, who cannot read most of the policy and have relied in earlier years on their insurance agent and, on occasion, apparently even G & M Marine to explain their obligations, take this requirement as seriously as their other main obligations, since Lanh Nguyen could not be aboard the vessel on the voyage wherein it sank, the Trans had been careful to place on board the F/V DeQueen as a deckhand-fisherman Paul Landry of Houma, Louisiana, who is an American citizen by birth.

6- The Court finally needs to know, showing the serious issues of material fact involved in the erroneous confection Of the warranty, that when DeQueen, Inc., asserted by letter that the source of the error had to be someone inside G & M Marine, Inc., the insurers' attorney came back with three bizarre documents which purported to prove that on October 26, 2011, Ms. Dao Tran issued a change of captains in the warranty. The three documents in fact are unrelated in time. If Exh. 4 is examined, the first two documents bear the signature of Captain Hung Tran, not Mrs. Dao Tran, and yet Hung Tran, after an earlier sinking of a vessel named the St. Jude which was also owned by the Trans, never again dealt with the agent or insurer from the years 2007 to date; and Mrs. Dao Tran, his wife, solely

dealt with the agent and insurer after 2007 and therefore any document containing Hung Tran's signature could not have been issued on October 26, 2011 but is a document hauled out of earlier files with no chronological connection with October 26, 2011. In fact, the first two documents are undated, while appearing to bear Captain Tran's signature, but one (Exh. 4c) appears to refer to the F/V <u>St. Jude</u>, which sank in 2005, and has no relation to F/V <u>DeQueen</u>, and is simply not susceptible of any sensible interpretation, since it seems to be perhaps a second, third or fourth page of some larger document. The final document (Exh. 4d), which the insurers claim was a "renewal" of the policy to which all documents applied, is not, in fact a renewal, but a form to decline Terrorism Coverage and it gets quite interesting because it asserts in the printed part, that it is signed by Mrs. Dao Tran. In fact, though it says "Dao Tran", the signature is that of Hung Tran, but he questions the signature, stating that the way the signature ends does not appear to be his handwriting (see Affidavit, Exh. 3). Mrs. Dao Tran cannot print in English the beautiful script reading "Dao Tran" and states under oath that whoever filled in her name, it was not Mrs. Dao Tran who did so. Thus, the alleged documents are baffling and contradictory and replete with serious questions about their legitimacy and the source of this error. This clearly involves careful examination of several years of

files of G & M Marine, Inc., who at present is the main
defendant in the state court proceeding although the insurers
are likewise defendants. In fact, DeQueen, Inc. and the Trans
want to see if G & M can produce the original signed forms, not
a photocopy, and if it cannot, this raises some very serious
questions to be further explored. It was mentioned above that
the insurers herein for some reasons attached not the 2011
policy covering the loss but instead a 2007 St. Paul policy and
that appears to have the baffling change, so clearly this
contested "change" could not have been done on October 26, 2011.

    7 - Therefore, the Declaratory Judgment seems to be an
effort by these insurers to avoid having the underlying factual
dispute and, more importantly, a necessary or perhaps
indispensable party, G & M Marine, Inc., even appear in the
case, the insurers merely seeking to rely upon the absurd "on
board warranty" which now contains two incompetent persons as
the "captains" and on its face makes no sense whatsoever.

    8 - Thus, based on the showing made by DeQueen, Inc. and the
Trans herein, this case involves serious issues of material fact
as to how this absurd alleged change took place and these are
not "invented" issues but very legitimate issues, made even more
so by the three documents the insurers tried to produce.
Undersigned counsel was a maritime associate and then partner in
a major downtown firm for several years and if his experience in

14

this field is correct, all these changes would have been made in
the offices of G & M Marine, Inc., not the insurers and G & M
would prepare the policy for the insurers and the Trans,
although it would then be authorized to issue the policy by the
insurers in exchange for the premium. The insurers located in
Scottsdale, Arizona (National) and Princeton, New Jersey
(American) would have no idea whether the persons in the "on
board warranty" were vessel captains or not. No fair resolution
of this matter can be reached without G & M as a party and
DeQueen, Inc. has sued G & M Marine, Inc. as a separate
defendant in the state court litigation.

    9 - This alone justifies this Court abstaining from issuing
a Declaratory Judgment sans examination of this evidence, but a
better reason why this specific matter should be declined is
that since filing this Declaratory Judgment, the insurers and G
& M Marine, Inc. have filed a Notice of Removal of the state
court proceeding to federal court. Counsel for the Trans
presumes that this matter has been transferred to this Court and
consolidated, although there has not actually been formal
service of anything, the attorneys for the insurers merely
sending counsel a "courtesy copy" of the Notice of Removal. The
Trans plan to contest this removal, which makes the offensive
statement that the Trans "fraudulently" named G & M Marine, Inc.
for the sole purpose of avoiding federal jurisdiction and no

other purpose. As undersigned counsel after 45 years of law is a
bit more forgiving than younger attorneys, he does not plan to
seek sanctions, but, with opposition to removal apparently due
October 17, will oppose the removal by showing that based on the
above facts, the inclusion of G & M Marine, Inc. as a defendant
is not "fraudulent" in the least but based upon clear and
manifest issues regarding how the now absurd policy provision
came to be changed and counsel believes he has set forth enough
in this Motion and Memorandum that this Court will agree that G
& M Marine, Inc. is a serious and bona fide defendant and, in
fact, practically the main defendant. Also, having had at least
100-150 cases, primarily maritime, in federal court over more
than four decades of legal practice, counsel has no objection to
federal court jurisdiction whatsoever, but was forced to
conclude that in this case, since the Trans are Louisiana
citizens and G & M Marine, Inc., either a necessary or
indispensable party to any litigation on this subject, is a
Louisiana corporation, then federal jurisdiction is not proper
because there is not complete diversity, so counsel had no
choice but to file suit in Civil District Court.

   The main point is that if removal is successful, then in the
removed case all parties are represented, all issues raised, and
at an appropriate time, the insurers can advance their arguments
for non-coverage. Thus prima facie this should not be decided by

Declaratory Judgment but should be decided in the "removed" action containing all parties and issues. Thus this Court should refuse to entertain the Declaratory Judgment, which seeks a decision without the underlying major issues being considered.

Therefore, the Declaratory Judgment should be declined by this Court, reserving to the insurers their right to plead this defense in the main action, which is preserved by that case. As stated, the "Declaratory Judgment" move is just an attempt by the insurers to get a judgment while denying this Court the serious underlying issues in the state court proceeding and attempting to leave G & M Marine entirely out of the case.

10 - Thus, the Court herein should decline to accept jurisdiction over this Declaratory Judgment for the reasons set forth both by Judge Africk in the matter cited above and for the reasons set forth by Judge Feldman in the Rowan Companies case cited below in Legal Argument.

11 - As this is the second time counsel has been subjected by these insurers to an attempt to seek a "declaratory judgment" in advance of considering all the underlying issues in the case and always leaving out parties who belong in the litigation, counsel in behalf of the Trans will make the same point made by another counsel in the matter before Judge Africk. Were these insurers, who appear to take this approach in all cases, successful in getting this Court to consider the Declaratory

Judgment, then, as insurers trade information and local firms trade information, this overworked federal court will become a dumping grounds for dozens and dozens of attempted "declaratory judgments" in this regard coming from all sorts of insurers always seeking even before lawsuits have been filed, to have overworked federal judges take a great deal of their and their law clerks' time ruling on these matters.

As was true in the "Tom's Welding Services" case before Judge Africk and this case, the insurers have sought a "Declaratory Judgment" before anyone even filed suit. In that case, there was also the argument that the Court was being asked to issue an advisory opinion on a matter not yet even in litigation. This technically is true here, since the Declaratory Judgment action was filed a day before the Trans filed suit, but the problem is that the "Declaratory Judgment" leaves out necessary and indispensable parties and seeks a "judgment" without all the underlying facts being available to the Court and therefore carefully edited out. The Trans' lawsuit in Civil District Court has been assigned to the Honorable Steven Bruno, a very competent and experienced state court judge. Judge Bruno is fully capable of understanding this case and rendering the appropriate decisions. But again, Judge Bruno does not have the case because the Trans and their counsel "prefer" state court over federal court. He has the case because there is simply no

complete diversity between the parties and therefore state court is the only appropriate forum.

LEGAL AUTHORITY

Under the federal Declaratory Judgment Act, 28 USC 2201 et seq., a federal court may use its discretion to decline to decide a declaratory judgment for various reasons. See, e.g., Rowan Companies vs Blanton, 764 FS 1090 (ED La. – 1991)and National Casualty Co. et al vs Tom's Welding Services, Inc., No. 11-3101-"A" of this Court (Judge Africk).

This case presents many of the considerations referred to by Chief Judge Martin L.C. Feldman in refusing to entertain a declaratory judgment in Rowan Companies vs Blanton, 764 FS 1090 (ED La. – 1991) the reasoning being followed substantially by Judge Africk in the Tom's Welding Services case, above, which involved the same insurers and an insured, another case where a declaratory judgment was sought before anyone filed suit.

Here, the issues can either be decided in full under the case which the insurers are seeking to remove to federal court or else in the pending litigation in Civil District Court as to which removal is sought, with G & M Marine, Inc., the underwriter charged with committing errors in preparing the policy, completely in the litigation and all issues raised herein amenable to complete decision after discovery is

19

conducted, including, after the facts are established, the insurers' right herein to seek to claim non-coverage.

Thus, refusal to entertain the Declaratory Judgment by this Court will not prejudice the underwriters' right to make the same claims in the full litigation which is now underway. In Rowan Companies, above, Chief Judge Feldman may have realized that Declaratory Judgments filed before anyone filed suit would potentially burden this and other federal courts with perhaps dozens and dozens of cases involving unnecessary work by federal judges and their clerks in an already overworked federal court. To do so would open the door—and for once the cliché "Pandora's Box" is appropriate to not just these maritime cases, but could inspire burdening every federal judge in this Court with every insurance policy coverage issue in Louisiana when filed even before litigation ensues, with federal judges deluged by "coverage" issues prior to any suit being filed in not just marine insurance, but automobile accident policies, major property insurance claims, homeowner's insurance claims, medical insurance claims, etc.

Judges Feldman and Africk cite numerous other factors militating against accepting jurisdiction over this type of declaratory judgment, including possibility (here an actual fact) of state court and other proceedings on the main issues and thus duplication of efforts by state and federal judges;

parallel decisions and duplication of discovery through
depositions, etc. in two actions; the fact this would encourage
forum shopping by insurers, among several reasons for declining
to entertain these attempts at a "declaratory judgment" on
insurance issues before facts are established through discovery.

Since the "declaratory judgment" here in fact was sought
before any litigation had ensued just as was the case in the
Tom's Welding Services case before Judge Africk, as said, this
would open the door to pre-litigation "declaratory judgments"
being foisted upon federal judges in every area of insurance
law, not just marine insurance claims, even before an insured or
third party made a formal claim or filed suit.

Finally, in Louisiana ordinarily the "onboard warranty"
provision would be automatically enforced, but the insurers cite
a well-known case which also contains in its very language a
statement as to when an "on board warranty" will not be
automatically enforced, which statement supports the Trans. The
Court in Gabarick vs Laurin Maritime (Am.), Inc., 650 F3d 545,
553 (USCA 5 – 2011) states that when the provisions of an
insurance policy are "clear, explicit, and lead to no absurd
consequences" the contract must be interpreted within its four
corners."  Certainly, this Court, just prima facie on the
reading of the warranty which now allegedly has replaced
competent captains with two persons not competent to pilot the

vessel, will agree that the insurers' interpretation leads to an absurd consequence, since a warranty designed to insure that competent captains are aboard the vessel now through some error contains the names of two people who cannot pilot the vessel; the insurer is stating delightedly, "we do not cover your loss even though Captain Phuong Tran, a fully competent captain, was at the wheel at the time of the disaster, because you did not have a housewife and/or deckhand on board who cannot pilot the vessel. We agree that had Mrs. Tran been on board doing her needlepoint, there would be coverage even though she was allowing her six-year old grandson have fun attempting to steer the vessel." This is per se absurd. More importantly, it involves clear issues of material fact as to the source of this disputed document and is a clear mistake which should cause a court to either void the clause or reform it to reflect the true intent of the parties, which is to assure a competent captain was at the helm—and he was, which is the intent of the warranty. But it certainly is not decided by a declaratory judgment with the above facts being brought to the attention of this Court.

### C O N C L U S I O N

If this matter is to be decided at all in federal court, it should be decided in the larger case which the Movers have sought to remove to federal court, which contains all relevant, necessary and/or indispensable parties and raises all issues to

22

be decided. Thus, this Court should decline to exercise jurisdiction by way of this "Declaratory Judgment" and should state that the issues raised herein, if they are to be decided at all in federal court, will be decided as part of that action.

In fact, if federal jurisdiction herein is not proper in the case sought to be removed, still the insurers have a full day in court before a very competent state court judge to raise all their defenses and have the issues decided. Therefore, this Court should decline under 28 USC 2201 to accept jurisdiction over this "Declaratory Judgment" which, as said, will invite every insurer which learns about this matter to be induced to load down the judges of this Court with declaratory judgment after declaratory judgment even before any plaintiff has filed a suit and this can be in all areas of insurance law, not just maritime, since most automobile insurance policies in this state will meet the diversity requirements of federal law.

Submitted at New Orleans, Louisiana October 3, 2013.

_____
OVERTON T. HARRINGTON, JR. (TA) (6599)
718 3rd Street
Gretna, Louisiana 70053
Tel.: 504-232-0236; fax: 366-2105
E-Mail:
Attorney for DeQueen, Inc.

## C E R T I F I C A T E

Undersigned counsel certifies that copies of the foregoing Notice of Submission, Order, Motion, and Memorandum in Support of Motion and Exhibits have been served on National Casualty Insurance Company and American Alternative Insurance Corporation by this Court's electronic filing system but also by a copy thereof served on their counsel of record, Joseph E. Lee, Esq., Messrs. Preis & Roy, 601 Poydras Street, Suite 1700, New Orleans, Louisiana 70130, by U.S. Mail, postage prepaid and properly addressed, this 3rd day of October, 2013.

OVERTON T. HARRINGTON, JR.